UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.                                                                                          16 CR 93

ARTHUR JORDAN,                                                          STATEMENT OF DEFENDANT
                                                                                        REGARDING SENTENCING
                         Defendant.                                            FACTORS
_____


       I, Martin J. Vogelbaum, am an Assistant Federal Public Defender in the Western District of New York. I represent the defendant, Arthur Jordan. I have reviewed the presentence report with him. Pursuant to U.S.S.G. § 6A1.2 and Fed. R. Crim. P. 32(f), we dispute the following statements, conclusions, and information in it:[1]

## Objections Requiring Resolution by the Court

       These objections, in Mr. Jordan's view, require resolution by the Court. They bear on the meaning of his plea agreement, the correct calculation of his sentencing guidelines, and the legality of proposed special conditions of supervised release. *See generally* Fed. R. Crim. P. 32(i)(3)(B), (C) (court must rule on any disputed portion

---

[1] Mr. Jordan requests that the Court advise him of all information it will consider in sentencing that may negatively impact him, and about which he has no prior notice from the presentence report; including, but not limited to, *ex parte* communications with United States Probation Officers and victims. *United States v. Mueller*, 168 F.3d 186 (5th Cir. 1999); *United States v. Corace*, 146 F.3d 51 (2d Cir. 1998); *United States v. Rivera*, 96 F.3d 41 (2d Cir. 1996).

of the PSR or other controverted matter unless it won't affect sentencing or the court won't consider it in sentencing; and, court must append a copy of its determinations to any copy of the PSR forwarded to the Bureau of Prisons). *Cf. Santobello v. New York*, 404 U.S. 257, 261-262 (1971) (where a guilty plea is induced by promises, those promises must be honored and their "essence in some way be made known"). *Gall v. United States*, 552 U.S. 38, 49 (2007) (district court must begin the sentencing process by correctly calculating the guidelines range). *United States v. Myers*, 426 F.3d 117, 123-124 (2d Cir. 2005) (district court may impose special conditions of supervised release that are reasonably related to certain statutory sentencing purposes, effect no greater restriction of liberty than is necessary, and are consistent with relevant policy statements of the United States Sentencing Commission).

**Page 4, ¶ 5:**

This paragraph explains the plea agreement (Doc. 70)[2] accurately, but incompletely.

Mr. Jordan and the government understand the plea agreement as establishing an agreed upon "ceiling" guideline range of 21-27 months. Not only may the Court impose the sentence for the instant offense "concurrently to the remainder of the undischarged term of imprisonment," it may also adjust that sentence to account for the time served by Mr. Jordan in primary state custody for the related

---

[2] The docket entries will be cited as "Doc. # at #."

state offense, as provided for at U.S.S.G. § 5G1.3(b)(1). This understanding is memorialized in a letter submitted to this Court by Mr. Jordan (Doc. 65), statements made by the parties, and acknowledged by the Court, during Mr. Jordan's Rule 11 colloquy (Doc. 68), and email correspondence between the undersigned and the government (available upon request of the Court).

The significance of this objection lies in the importance of the PSR itself. Should this Court commit Mr. Jordan to the custody of the Bureau of Prisons, the BOP will (in conjunction with other materials) rely on it to make all manner of determinations about his sentence. *See generally United States v. Murchison*, 865 F.3d 23, 27 (1st Cir. 2017) (discussing uses to which BOP puts the PSR). Consequently, it is important that the PSR accurately and completely reflect the parties' and the Court's consensus understanding of Mr. Jordan's plea agreement.

**Page 8, ¶ 33:**

Mr. Jordan objects to the assessment of a criminal history point for this alleged Tennessee juvenile adjudication.

The sentencing guidelines provide for the assessment of criminal history points for "prior sentences." U.S.S.G. § 4A1.1. A "prior sentence" is "any sentence previously imposed upon adjudication of guilt…for conduct not part of the instant offense." § 4A1.2(a)(1); *see also* § 4A1.2(a)(4) (permitting the assessment of a criminal history point where a defendant has been convicted but not sentenced, and defining a "conviction" as the establishment of the guilt of the defendant in a judicial

proceeding). The rule is no different in the case of juvenile adjudications, or adult convictions incurred prior to the age of eighteen. § 4A1.2(d)(2)(b); *see also* § 4A1.2, App. Note 7.

At sentencing, the government bears the burden of proving any facts – like the fact of a prior adjudication or conviction – necessary to the assessment of criminal history points, by a preponderance of the evidence. *E.g.*, *United States v. Dipina*, 178 F.3d 68, 75 (1st Cir. 1999); *United States v. Torres*, 182 F.3d 1156, 1162 (10th Cir. 1999). While the rules of evidence don't apply at sentencing, the government still must satisfy its burden using reliable evidence. § 6A1.3(a) (sentencing information must bear sufficient indicia of reliability to support its probable accuracy); *Cf. Townsend v. Burke*, 334 U.S. 736, 741 (1948) (due process prohibits reliance on materially inaccurate information at sentencing).

To the best of the undersigned's knowledge, the only support for the allegations in this paragraph is a prior Erie County Probation Department PSR.  A paragraph of that PSR baldly asserts that Mr. Jordan was adjudicated delinquent, and received a probationary sentence. However, the Erie County PSR does not append or reproduce the documentation on which it relies for this assertion. The instant federal PSR merely repeats, essentially verbatim, the unsubstantiated allegations from the Erie County PSR. In other words, the assertions in the instant PSR are hearsay repeating hearsay. There is not a single document from Tennessee establishing that Mr. Jordan was adjudicated delinquent.

Although it is true that courts have sometimes relied on PSRs to establish the fact of a prior adjudication or conviction, in those cases – unlike here -- there was at least some underlying documentation or other clear indication of reliability rendering the Court's confidence justified. *E.g.*, *United States v. Brown*, 52 F.3d 415, 425 (2d Cir. 1995) (Vermont federal court could rely on New York PSR prepared by New York probation officer based upon New York convictions for use in a New York court); *United States v. Alvarado-Martinez*, 556 F.3d 732, 735 (9th Cir. 2009) (fingerprint matched rap sheet sufficiently reliable to assign criminal history points, at least in absence of contravening evidence); *United States v. Acosta*, 287 F.3d 1034, 1037-1038 (11th Cir. 2002) (uncertified copy of sealed juvenile drug adjudication coupled with defense counsel's admission that his client was the person named in the document sufficed to carry government's burden).

Here, the record contains no such indicia of reliability. The government hasn't met its burden of proving that Mr. Jordan was adjudicated delinquent in Tennessee, and he should not be assigned a criminal history point under this paragraph.

**Page 14, ¶ 52:**

For the reasons above, Mr. Jordan maintains that he is in criminal history category II, with a guideline imprisonment range of 21-27 months.

**Page 14, ¶ 55:**

For the reasons above, Mr. Jordan maintains that he is in criminal history category II, with a guideline imprisonment range of 21-27 months. Further, as agreed by the parties, acknowledged by the Court, and explained above, the plea agreement provides for a guideline imprisonment range "ceiling" of 21-27 months, with no "floor" to the ultimate sentence.

**Page 23 (Proposed Special Conditions of Supervised Release):**

Regarding the proposed "substance abuse" special condition, Mr. Jordan objects to the requirement that he immediately commence substance abuse treatment. The need for immediate treatment is not supported by the record, which does not demonstrate that substance abuse is a criminogenic factor in Mr. Jordan's case such that immediate treatment would further the statutory sentencing purposes of public protection, deterrence, and rehabilitation. *United States v. Betts*, 886 F.3d 198, 202-203 (2d Cir. 2018).

Mr. Jordan also objects to so much of the proposed special condition as preordains abstention from alcohol if treatment is indicated or ordered; this is not warranted by the record and is a clinical judgment that should be made by a qualified professional. *Betts*, 886 F.3d at 202-203.

Mr. Jordan further objects to the requirement that he contribute to the costs of any services rendered, to the extent that this requirement is not explicitly conditioned upon his then-present ability to pay. *Cf. Bearden v. Georgia*, 461 U.S.660,

672-673 (1983) (State may not revoke probation and order imprisonment for failure to pay a fine or restitution unless: 1) the failure to pay is willful or the result of insufficient *bona fide* efforts to ante up; and, 2) alternative forms of sanction, e.g., community service, are insufficient to vindicate the State's penal interests).

Mr. Jordan does **not** object to: 1) undergoing a drug/alcohol abuse evaluation and participating in outpatient treatment and testing if the evaluation indicates a need for them; 2) permitting the probation officer to supervise the administrative details of testing and/or treatment, if any is indicated; 3) requiring a Court order for nonconsensual inpatient treatment; and, 4) the requirement that he continue any indicated outpatient, or nonconsensual Court ordered inpatient, treatment to completion, or until released by the Court.

Regarding the proposed "mental health" special condition, Mr. Jordan objects to the preordained abstention from alcohol while in treatment, if any, or while taking psychotropic medications. This is not supported by the record, and is a clinical judgment that should be made by a qualified professional. *Betts*, 886 F.3d at 202-203.

Mr. Jordan also objects to the requirement that he contribute to the costs of any services rendered, to the extent that this requirement is not explicitly conditioned on his then-present ability to pay. *Cf. Bearden*, 461 U.S. at 672-673.

Mr. Jordan does **not** object: 1) to undergoing a mental health evaluation and participating in any treatment that may be recommended as a result; 2) to the probation officer supervising the administrative details of the testing and treatment, if any is indicated; 3) to the requirement of a Court order for nonconsensual inpatient

treatment; and, 4) to the requirement that he continue with any indicated outpatient, or nonconsensual Court ordered inpatient, treatment to completion, or until release by the Court.

## Objections Not Requiring Resolution by the Court

These objections, in Mr. Jordan's view, do not require resolution by the Court if it determines that the disputed facts will not affect his sentence, or that it will not consider the disputed facts in imposing sentence. *See generally* Fed. R. Crim. P. 32(i)(3)(B), (C) (court needn't rule on any disputed portion of the PSR if the controversy will not impact the sentence, or the court will not consider it in sentencing).

**Page 11, ¶ 40:**

Mr. Jordan supplements, and in part disputes, the factual allegations in this paragraph:

Mr. Jordan denies that he fought and struggled with officers; rather, while suffering the effects of mace or a similar eye irritant, an officer ordered him to leave and shoved him into the middle of the road. When he removed himself from the road for fear of being struck by a car, the officer pushed him again, prompting Mr. Jordan to ask for his badge number. In response, the officer threw Mr. Jordan to the ground and beat him, resulting in a head wound that required stapling at the Erie County Medical Center. *See* Erie County Medical Center Records (sealed exhibit).

**Page 11, ¶ 39; Pages 11-12, ¶ 41:**

Mr. Jordan generally disputes the factual allegations in these paragraphs, and notes that in each instance he was ultimately convicted of disorderly conduct violations, and not the substantially more serious charges lodged at arrest.

**Pages 12-13, ¶ 46; Page 13, ¶ 47; Page 13, ¶ 49:**

Mr. Jordan generally disputes the factual allegations in these paragraphs, and notes that in the first two instances he was never arrested, much less charged with any crime, while in the third no conviction resulted.

**Pages 13-14, ¶ 50:**

Counsel clarifies that "Shaquille" is Arthur **S.** Jordan's given middle name, not an "alias" in the sense of a false or assumed identity.

**Page 16, ¶ 68:**

Q'uran Ryles is Mr. Jordan's brother. Mr. Jordan denies that he told the Erie County Probation Department that Q'uran was his stepbrother. In other words, the Erie County presentence report is erroneous.

**DATED**: Buffalo, New York, July 19, 2018

                                                    Respectfully submitted,

                                                    **/s/  Martin J. Vogelbaum**
                                                    Martin J. Vogelbaum
                                                    Assistant Federal Public Defender
                                                    Federal Public Defender's Office
                                                    300 Pearl Street, Suite 200
                                                    Buffalo, New York 14202
                                                    (716) 551-3341 (Phone)
                                                    (716) 551-3346 (Fax)
                                                    Martin_Vogelbaum@fd.org
                                                    Counsel for Arthur Jordan

**TO:**    Paul C. Parisi
           Assistant United States Attorney

           Lindsay M. Maza
           United States Probation Officer Specialist